IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GOOD RIVER FARMS, LP, | § | |
| Plaintiff, | § § § | |
| v. | § | 1:17-CV-1117-RP |
| TXI OPERATIONS, LP and MARTIN MARIETTA MATERIALS, INC., | § § § § | |
| Defendants. | § § | |

## ORDER

Before the Court are several motions. The first is Plaintiff Good River Farms' ("GRF") Motion for Remand ("Motion to Remand"). (Dkt. 6). The second is Defendant TXI Operations, LP's ("TXI") Partial Motion to Dismiss ("TXI's Motion to Dismiss"). (Dkt. 5). The third is Defendant Martin Marietta Materials Southwest, LLC's ("MMMSW") Motion to Dismiss ("MMMSW's Motion to Dismiss"). (Dkt. 13). Having considered the parties' submissions, the record, and the applicable law, the Court issues the following order.

## I. BACKGROUND

GRF owns and operates a pecan farm abutting a portion of the Colorado River in Del Valle, Texas. (Am. Compl., Dkt. 7, at 3). GRF alleges that TXI created a 240-acre reservoir on the other side of the river and that the reservoir wall failed and flooded GRF's property. (*Id.* at 3–5). GRF asserts causes of action against TXI, MMMSW, and Martin Marietta Materials, Inc. ("MMM Inc.") (together, "Defendants") for private nuisance, negligence, and a violation of Texas Water Code § 11.086(a). (*Id.* at 5–11). GRF also asks the Court to permanently enjoin Defendants from maintaining a reservoir. (*Id.* at 11-12).

GRF first filed this action in the 353rd Judicial District Court in Travis County, Texas, on October 27, 2017. (Orig. State Pet., Dkt. 1-4). TXI then removed the case to this Court on

November 27, 2017, on the basis of this Court's diversity jurisdiction. (Not. Removal, Dkt. 1). TXI filed its motion to dismiss on December 4, 2017, (Dkt. 5), and GRF filed a motion to remand, (Dkt. 6). GRF then amended its complaint. (Dkt. 7). MMMSW later filed a motion to dismiss pertaining to GRF's claims against it, (Dkt. 13), after which the parties filed an agreed motion to dismiss GRF's claims against MMMSW, (Dkt. 18), which the Court granted, (Dkt. 19).

## I. GRF'S MOTION TO REMAND

Because GRF's motion to remand concerns the Court's subject matter jurisdiction over this action, the Court will address the motion to remand before turning to the motions to dismiss.

GRF argues that this Court lacks jurisdiction because MMMSW and TXI are Texas residents. (Mot. Remand, Dkt. 6, at 3).[1] Specifically, GRF argues that TXI's operations in Texas are so significant that its principal place of business is in Texas under the "total activity" test for corporate citizenship. (*Id.* at 3-4). TXI, meanwhile, argues that its principal place of business is in North Carolina under the "nerve center" test. (Resp. Mot. Remand, Dkt. 15, at 5–6). TXI also argues for ignoring MMMSW's citizenship, (*id.* at 2–5), but that issue is now moot given MMMSW's dismissal from the case, (*see* Order, Dkt. 19). The only remaining question, therefore, is whether GRF is diverse from TXI. Because the parties do not dispute that GRF is a Texas citizen or that TXI is incorporated in Delaware, (Mot. Remand, Dkt. 6, at 3–4; Not. Removal, Dkt. 1, at 1–2), the parties' diversity (or lack thereof) turns on the location of TXI's principal place of business.

A defendant may remove any civil action from state court to a district court of the United States that has original jurisdiction. 28 U.S.C. § 1441. District courts have original jurisdiction over all civil actions that are between citizens of different states and involve an amount in controversy in excess of $75,000, exclusive of interest and costs. 28 U.S.C. § 1332(a). Diversity jurisdiction

---

[1] GRF does not argue that MMM, Inc. is nondiverse, (*see* Mot. Remand, Dkt. 6), and TXI states without opposition that "[i]t is undisputed that [MMM, Inc.] . . . is a Delaware entity, and thus . . . does not destroy diversity jurisdiction." (Resp. Mot. Remand, Dkt. 15, at 2 n.2).

"requires complete diversity— if any plaintiff is a citizen of the same State as any defendant, then diversity jurisdiction does not exist." *Flagg v. Stryker Corp.*, 819 F.3d 132, 136 (5th Cir. 2016).

A corporation is a citizen of both any state in which it is incorporated and of the state where it has its "principal place of business." 28 U.S.C. § 1332(c)(1). A corporation's principal place of business is "the place where a corporation's officers direct, control, and coordinate the corporation's activities." *Hertz Corp. v. Friend*, 559 U.S. 77, 92–93 (2010). "In practice," the principal place of business "should normally be the place where the corporation maintains its headquarters—provided that the headquarters is the actual center of direction, control, and coordination, i.e., the 'nerve center,' and not simply an office where the corporation holds its board meetings." *Id.* at 93. This nerve center "is a single place." *Id.*

The party seeking removal "bears the burden of establishing that federal jurisdiction exists and that removal was proper." *Manguno v. Prudential Prop. & Cas. Ins. Co.*, 276 F.3d 720, 723 (5th Cir. 2002). The removal statute must "be strictly construed, and any doubt about the propriety of removal must be resolved in favor of remand." *Gasch v. Hartford Accident & Indem. Co.*, 491 F.3d 278, 281–82 (5th Cir. 2007).

GRF argues that the Fifth Circuit determines a corporation's citizenship by looking at its "total activity." (Mot. Remand, Dkt. 6, at 3 (citing *J.A. Olson Co. v. City of Winona, Miss.*, 818 F.2d 401, 411–12 (5th Cir. 1987)). According to GRF, TXI's revenues from its Texas operations are so substantial that its principal place of business lies in Texas. (*Id.* at 4). As TXI correctly points out, however, GRF's argument misstates the law.[2] (Resp. Mot. Remand, Dkt. 15, at 5). In *Hertz*, the U.S. Supreme Court explicitly rejected using a "business activities test" to determine corporate citizenship and held that a corporation's principal place of business is "the place where a corporation's officers

---

[2] GRF is admonished to take more care in citing legal authority in future filings. *See* Fed. R. Civ. P. 11(b) ("By presenting to the court a pleading, written motion, or other paper . . . an attorney or unrepresented party certifies that . . . the claims, defenses, and other legal contentions are warranted by existing law . . . .").

direct, control, and coordinate the corporation's activities." *Hertz*, 559 U.S. at 92–93. Contrary to GRF's assertion, the Fifth Circuit now uses the "nerve center" analysis from *Hertz* rather than the "total activities" analysis from *J.A. Olson*. *See Gu v. INVISTA S.a.r.l.*, 682 F. App'x 316, 317 (5th Cir.) ("[T]he phrase 'principal place of business' refers to the place where the corporation's high level officers direct, control, and coordinate the corporation's activities.") (citing *Hertz*); *S & T Oil Equip. & Mach., Ltd. v. Juridica Invs. Ltd.*, 456 F. App'x 481, 484 (5th Cir. 2012) (noting that *Hertz* requires courts to use the "nerve center" approach to determine citizenship under 28 U.S.C. § 1332(c)(1)).

TXI provides evidence that its headquarters is located in Raleigh, North Carolina, (Gillian Decl., Dkt. 16-1, at ¶ 6), and that "the majority of TXI's high level officers who direct, control, and coordinate" the company's activities are located in North Carolina. (Resp. Mot. Remand, Dkt. 15, at 5–6). These officers include all the trustees of TXI's general partner and the president of TXI's operating trust, who make every decision "materially impacting" the company. (*Id.* at 6). TXI also asserts that North Carolina is where the company's books are kept and where its head of human resources is located. (*Id.*). GRF points out that the Texas Secretary of State provides a Dallas, Texas, address for TXI, but offers no other evidence about where TXI's controlling officers are located. (Mot. Remand, Dkt. 6, at 4).[3] In light of this evidence, the Court is persuaded that TXI has carried its burden to establish that its nerve center is located in North Carolina and thus that it is diverse from GRF. The Court therefore finds that complete diversity exists among the parties and that the amount in controversy requirement is met, supplying the Court with subject-matter jurisdiction over this action.

---

[3] Even if TXI's headquarters are located in Dallas—which is implied by GRF's motion but not supported by any direct evidence—the Supreme Court was clear in *Hertz* that proving the location of a company's headquarters does not conclusively establish the location of the company's nerve center. *Hertz*, 559 U.S. at 93 (stating that a company's headquarters might not be the company's nerve center if, for example, it were "simply an office where the corporation holds its board meetings").

4

## II. TXI'S MOTION TO DISMISS

GRF filed its amended complaint after TXI's motion to dismiss. (Am. Compl., Dkt. 7; TXI Mot. Dismiss, Dkt. 5). An amended complaint supersedes the original complaint and renders it of no legal effect unless the amended complaint specifically refers to and adopts or incorporates by reference the earlier pleading. *King v. Dogan*, 31 F.3d 344, 346 (5th Cir. 1994). GRF's amended complaint does not adopt or incorporate by reference its state-court petition. When a plaintiff files an amended complaint while a motion to dismiss is pending, courts often dismiss the motion to dismiss as moot. *See Rodriguez v. Xerox Bus. Servs.*, LLC, No. EP-16-CV-41-DB, 2016 WL 8674378, at *1 (W.D. Tex. June 16, 2016) ("A plaintiff's filing of an amended complaint may render moot a pending motion to dismiss.") (collecting cases). Although a district court need not necessarily deny a pending motion to dismiss as moot, courts typically only refrain from doing so when the amended complaint does not address the defects asserted in the motion to dismiss. *See Jefferson Cmty. Health Care Ctrs, Inc. v. Jefferson Par. Gov't*, No. CV 16-12910, 2016 WL 4429953, at *2 (E.D. La. Aug. 22, 2016) ("Although courts may address the merits of a motion to dismiss even after an amended complaint is filed, as a general rule, 'if applying the pending motion to the amended complaint would cause confusion or detract from the efficient resolution of the issues, then it makes sense to require the defendant to file a new motion specifically addressing the amended complaint.'") (quoting Steven S. Gensler, Federal Rules of Civil Procedure, Rules and Commentary Rule 15 (2014)). Here, the parties disagree about when GRF's nuisance and negligence causes of action accrued under Texas law, and accordingly whether either claim is time-barred. (TXI Mot. Dismiss, Dkt. 5, at 3–4; Resp. Mot. Dismiss, Dkt. 8, at 3–6). GRF's amended petition differs from its original state-court petition in ways that may be material to the limitations-period analysis for each claim. (*Compare, e.g.*, Orig. Pet., Dkt. 1-4, at 4–6 (alleging permanent damage to GRF's property affecting its

value); *with* Am. Compl., Dkt. 7, at 5–8 (omitting any allegation of permanent damage affecting the property's value)). The Court therefore holds that TXI's motion to dismiss is moot.

### III. MMMSW'S MOTION TO DISMISS

MMMSW's motion to dismiss, (Dkt. 13), asks the Court to dismiss all of GRF's claims against it, (*id.* at 4). Because the Court has already dismissed with prejudice all of GRF's claims against MMMSW, (Dkt. 19), MMMSW's motion is moot.

### IV. CONCLUSION

For these reasons, the Court **ORDERS** that GRF's Motion for Remand, (Dkt. 6), is **DENIED** and that TXI and MMMSW's Motions to Dismiss, (Dkts. 5, 13), are each **DENIED AS MOOT**.

**SIGNED** on April 12, 2018.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE