IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TEXAS
AUSTIN DIVISION

| | | |
|---|---|---|
| GOOD RIVER FARMS, LP, | § | |
| | § | |
| Plaintiff, | § | |
| | § | |
| v. | § | 1:17-CV-1117-RP |
| | § | |
| MARTIN MARIETTA MATERIALS, INC., | § | |
| and TXI OPERATIONS, LP, | § | |
| | § | |
| Defendants. | § | |

**ORDER**

Before the Court is Defendants Martin Marietta Materials, Inc. and TXI Operations, LP's (together "Defendants") Motion for Summary Judgment. (Dkt. 43). Having considered the parties' submissions, the record, and the applicable law, the Court will grant in part and deny in part Defendants' motion.

**I. BACKGROUND**

This case arises out of the October 31, 2015 rainfall and flood ("October 2015 flood") that inundated and caused severe damage to Plaintiff Good River Farms, LP's ("Good River") pecan farm. (Am. Compl., Dkt. 54, at 4). Good River brings claims of private nuisance, negligence, negligence per se, as well as a violation of Texas Water Code Section 11.086, and requests a permanent injunction against Defendants for their alleged failure to properly maintain the excavated pit ("the pit") on their property such that the October 2015 flood led to extensive flooding and damage to Good River's property. (*Id.* at 6–14). On October 1, 2019, Defendants moved for summary judgment on all of Good River's claims. (Mot. Summ. J., Dkt. 43).

Good River and Defendants own land directly across from one another on the Colorado River. (*Id.*, at 2). Defendants use their land for strip mining, which has resulted in the presence of the

1

pit, which is filled with groundwater and located about 200 feet from the banks of the Colorado River. (Dkt. 54, at 2, Dkt. 43, at 2). In October 2013, a flood caused two breaches on the west and east sides of the north end of the pit. (Schiwitz Decl., Dkt. 43-1, at 4). While these breaches "released a deluge of impounded surface water," the resulting flooding of Good River's property did not cause damage to the farm. (Dkt. 54, at 2). The parties dispute whether the October 2013 flooding of Good River's property originated from Defendants' property or the Colorado River. (Dkt. 43, at 3; Pl.'s Resp., Dkt. 48, at 3). In early 2015, Defendants' Equipment Operator, Dennis Schiwitz, repaired the west beach of the north end of the pit but did not repair the east breach of the north end of the pit until 2017. (Schiwitz Decl., Dkt. 43-1, at 4).

On October 30, 2015, heavy rainfall and flooding upstream caused flooding to both Defendants' and Good River's properties. (Dkt. 54, at 4). Good River alleges that after Defendants had evacuated their property, which was already flooded, workers on the Good River farm saw "water coming over the northernmost wall" of the pit, which "rushed into, through, and across the river, both diverting the natural flow of the river and rushing onto" Good River's farm. (*Id.* ("workers on the farm witnessed the flood current running perpendicular to the Colorado River.")). At the time of the October 2015 flood, the east breach at the north end of the pit had not been repaired. (Dkt. 43-1, at 4). Good River also alleges that a breach existed at the western wall of the pit at the time of the October 2015 flood. (Dkt. 54, at 3). The October 2015 flood did not result in any further breaches to the north end of the pit, though Good River alleges that the northernmost wall of the pit "was lower" after the October 2015 flood. (Dkt. 43-1, at 5; Dkt. 54, at 5). The crux of the parties' dispute arises from the proper characterization of the water that flooded Good River's property during the October 2015 flood as "surface water" or floodwater from the Colorado River watercourse. (Dkt. 43, at 3; Dkt. 48, at 3–4).

## II. LEGAL STANDARDS

Summary judgment is appropriate when there is no genuine dispute as to any material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(a); *Celotex Corp. v. Catrett*, 477 U.S. 317, 323–25 (1986). A dispute regarding a material fact is "genuine" if the evidence is such that a reasonable jury could return a verdict in favor of the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). "A fact is material if its resolution in favor of one party might affect the outcome of the lawsuit under governing law." *Sossamon v. Lone Star State of Tex.*, 560 F.3d 316, 326 (5th Cir. 2009) (quotations and footnote omitted). When reviewing a summary judgment motion, "[t]he evidence of the nonmovant is to be believed, and all justifiable inferences are to be drawn in his favor." *Anderson*, 477 U.S. at 255. Further, a court may not make credibility determinations or weigh the evidence in ruling on a motion for summary judgment. *Reeves v. Sanderson Plumbing Prods., Inc.*, 530 U.S. 133, 150 (2000).

Once the moving party has made an initial showing that there is no evidence to support the nonmoving party's case, the party opposing the motion must come forward with competent summary judgment evidence of the existence of a genuine fact issue. *Matsushita Elec. Indus. Co. v. Zenith Radio*, 475 U.S. 574, 587 (1986). When the movant bears the burden of proof, she must establish all the essential elements of her claim that warrant judgment in her favor. *See Chaplin v. NationsCredit Corp.*, 307 F.3d 368, 372 (5th Cir. 2002). In such cases, the burden then shifts to the nonmoving party to establish the existence of a genuine issue for trial. *Austin v. Kroger Texas, L.P.*, 864 F.3d 326, 335 (5th Cir. 2017). Unsubstantiated assertions, improbable inferences, and unsupported speculation are not competent summary judgment evidence, and thus are insufficient to defeat a motion for summary judgment. *Turner v. Baylor Richardson Med. Ctr.*, 476 F.3d 337, 343 (5th Cir. 2007). Furthermore, the nonmovant is required to identify specific evidence in the record

3

and to articulate the precise manner in which that evidence supports his claim. *Adams v. Travelers Indem. Co. of Conn.*, 465 F.3d 156, 164 (5th Cir. 2006). Rule 56 does not impose a duty on the court to "sift through the record in search of evidence" to support the nonmovant's opposition to the motion for summary judgment. *Id.* After the nonmovant has been given the opportunity to raise a genuine factual issue, if no reasonable juror could find for the nonmovant, summary judgment will be granted. *Miss. River Basin All. v. Westphal,* 230 F.3d 170, 175 (5th Cir. 2000).

### III. DISCUSSION

Defendants move for summary judgment on all of Good River's claims, arguing that the October 2015 flood of Good River's farm was caused by "unfortunate acts of god" rather than any act or omission by Defendants (Mot. Summ. J., Dkt. 43, at 1). Good River responds that Defendants have not met their burden for summary judgment on any of its claims. (Pl.'s Resp., Dkt. 48, at 6). The Court will address each claim in turn.

#### A. Violation of Texas Water Code Section 11.086(a)

Green River alleges that Defendants violated Texas Water Code ("TWC") Section 11.086(a), which provides that "No person may divert or impound the natural flow of surface waters in this state, or permit a diversion or impounding by him to continue, in a manner that damages the property of another by the overflow of the water diverted or impounded." TEX. WATER CODE ANN. § 11.086 (2019). Defendants argue that because the surface water that flowed from the pit during the October 2015 flood mixed with the Colorado River, said water became part of the watercourse and ceased to be "surface water" as required under the statute. (Dkt. 43, at 7). Good River counters that although the water from Defendants property necessarily crossed the Colorado River to reach Good River's property, that water did not lose its definition as "surface water" while en route to the Good River property. (Dkt. 48, at 10). The primary dispute between the parties is thus the proper

characterization of the waters that flooded Good River's property and whether such waters give rise to an actionable claim under TWC section 11.086.

Damages are allowed under TWC section 11.086 when "(1) a diversion or impoundment of surface water, (2) causes, (3) damage to the property of the plaintiff landowner." *Dietrich v. Goodman*, 123 S.W.3d 413, 417 (Tex. App.—Houston [14th Dist.] 2003, no pet.). To be actionable under TWC section 11.086, the waters that flooded Good River's property must be "surface water," rather than floodwater stemming from the watercourse of the Colorado River. The term "surface water," although not defined by statute, has been interpreted by Texas courts to mean water "which is diffused over the ground from falling rains or melting snows, and [it] continues to be such until it reaches some bed or channel in which water is accustomed to flow." *Id.*; *Dalon v. City of DeSoto*, 852 S.W.2d 530, 538–39 (Tex. App.—Dallas 1992, writ denied). Additionally, "[t]he chief characteristic of 'surface water' is that it does not follow a defined course or channel and does not gather into or form a natural body of water." *Id.* at 419; *see also Dalon*, 852 S.W.2d at 538.

As opposed to "surface water," a watercourse is defined as having "(1) a bank and bed, (2) a current of water, and (3) a permanent source of supply." *Dietrich*, 123 S.W.3d at 418 (citing *Hoefs v. Short*, 114 Tex. 501, 273 S.W. 785, 787 (1925)). Separately, "[f]loodwaters are those which, generally speaking, have overflowed a river, stream or natural water course and have formed a continuous body with the water flowing in the ordinary channel." *Valley Forge Ins. Co.*, 174 S.W.3d at 258 (quoting *Sun Underwriters Ins. Co. v. Bunkley*, 233 S.W.2d 153, 155 (Tex. App.—Fort Worth 1950, writ ref'd)). Courts in Texas have held that "surface water" may change in character once it comes "under the control and direction of a watercourse." *Dietrich*, 123 S.W.3d at 420; *see also Dalon*, 852 S.W.2d at 538–539 ("[I]f the floodwater forms a continuous body with the water flowing in the ordinary channel, or if it temporarily overflows presently to return, as by recession of the waters, it is to be regarded as still a part of the stream") (internal citations omitted).

Here, the parties dispute the source and character of the water that flooded the Good River property during the October 2015 flood. Good River alleges that the water that flooded its property flowed directly from Defendants property across the Colorado River to Good River's property, and thus never followed a "defined course and had not formed a natural body of water." (Pl.'s Resp., Dkt. 48, at 10; Lopez Dep., Dkt. 48-1, App. 38:6–40:12 (water on Defendants' property "went over that border of the embankment …[and]…went over it. And when it went over, that is when it started to come onto the farm"). Because the water from Defendants property did not become "accustomed to flow" in the Colorado River, Good River argues that it retained its character as "surface water." (Dkt. 48, at 10); *Dietrich*, 123 S.W.3d 419. Defendants, on the other hand, argue that the moment the water from the pit reached the Colorado River, it ceased to be "surface water" as a matter of law, thus precluding Defendants' liability under TWC section 11.086(a). (Dkt. 43, at 6–7).

Because there is a factual dispute as to whether the water from Defendants property became "accustomed to flow" in the Colorado River before entering the Good River property, the Court will deny Defendants' motion for summary judgment on Good River's TWC section 11.086(a) claim. *See Tex. Woman's Univ. v. The Methodist Hosp.*, 221 S.W.3d 267, 277–283 (Tex. App.—Houston [1st Dist.] 2006, no pet.) (denying summary judgment where "the primary dispute between the parties concerns the proper characterization of the waters that flooded [plaintiff's property], and whether such waters give rise to an actionable claim under section 11.086"). While Defendants argue that the water from its property ceased to be "surface water" the moment it reached the Colorado River as a matter of law, Good River correctly points out that the case upon which Defendants rely involved "surface water" that entered a watercourse and flowed downstream before allegedly damaging plaintiff's property. *See Bonin v. Sabine River Auth. of Tex.*, 2018 WL 1190234, at *5 (E.D. Tex. Feb. 8, 2018), *report and recommendation adopted*, 2018 WL 1185256 (E.D. Tex. Mar. 7, 2018) (granting motion to dismiss where plaintiff sustained "injuries through downstream flooding" after

6

gates released the water into the Sabine River). Because there remains a genuine dispute as to whether the surface water from the pit flowed downstream before flooding Good River, or crossed the Colorado river without becoming "accustomed to flow" within it, the Court will deny Defendants' motion for summary judgment on Good River's claim under TWC section 11.086(a).

### B. Negligence per se

Good River further alleges that Defendants' violation of TWC section 11.086(a) constitutes negligence per se, for which Good River is entitled to collect exemplary damages. (Dkt. 54, at 12). Defendants argue that because Good River has no claim under TWC section 11.086(a), its negligence per se claim fails as a matter of law. (Dkt. 43, at 7). In addition, Defendants claim that TWC section 11.086(a) cannot form the basis of a negligence per se claim because it is not a criminal penal statute. (Dkt. 43, at 8). Good River responds that statutes need not be criminal in nature to be considered penal for the purposes of establishing negligence per se, and that TWC section 11.086(a) is penal because it identifies conduct necessary for compliance, authorizes recovery of damages stemming from its violation, and draws a causal connection between violation of the statute and injury. (Dkt. 48, at 12).

"Negligence per se applies when the courts have determined that the violation of a particular statute is negligence as a matter of law." *Trevarthen v. U.S. Bank Nat'l Ass'n*, 2013 WL 12099974, at *3 (W.D. Tex. Apr. 29, 2013), aff'd, *Trevarthen v. U.S. Bank Nat. Ass'n*, 551 F. Ap'x 148 (5th Cir. 2014) (citation omitted). To establish negligence per se, a plaintiff must prove that: (1) the defendant's act or omission is in violation of a statute or ordinance; (2) the injured person was within the class of persons which the ordinance was designed to protect; and (3) the defendant's act or omission proximately caused the injury. *Miranda v. TriStar Convenience Stores, Inc.*, 2013 WL 3968337, at *6 (Tex. App.—Houston [1st Dist.] Aug. 1, 2013, no pet.) (mem. op.) (citing *Ambrosio v. Carter's Shooting Ctr., Inc.*, 20 S.W.3d 262, 265 (Tex. App.—Houston [14th Dist.] 2000, pet. denied)).

Under Texas law, only the violation of "a penal statute" can give rise to negligence per se. *Smith v. Merritt*, 940 S.W.2d 602, 607 (Tex. 1997); *see also Perry v. S.N.*, 973 S.W.2d 301, 304-07 (Tex. 1998); *Ridgecrest Retirement & Healthcare v. Urban*, 135 S.W.3d 757, 762 (Tex. App.—Hous. [1st Dist.] 2004, pet. denied) ("A violation of a non-penal administrative code statute does not establish a negligence per se claim."). A "penal statute is one that defines a criminal offense and specifies a corresponding fine, penalty or punishment." *Pack v. Crossroads, Inc.*, 53 S.W.3d 492, 509–10 (Tex. App.—Fort Worth 2001, pet. denied). Because the provisions of the TWC on which Good River relies for its negligence per se claim do not contain criminal penalties, it is not "penal in nature, and therefore [cannot] serve as the basis of a negligence per se claim." *Watkins v. Cornell Companies, Inc.*, 2013 WL 1914713, at *3 (N.D. Tex. Mar. 15, 2013) *report and recommendation adopted*, 2013 WL 1926375 (N.D. Tex. May 8, 2013). As a result, the Court grants Defendants' motion for summary judgment on Good River's negligence per se claim.

### C. Negligence

Under Texas law, the elements of negligence are the existence of a legal duty, breach of that duty, and damages proximately caused by the breach. *Lakeside Vill. Homeowners Ass'n, Inc. v. Belanger*, 545 S.W.3d 15, 38 (Tex. App. 2017). The parties dispute the first element of Good River's negligence claim: whether Defendants owed Good River a duty of care under TWC section 11.086 or the common law. Good River alleges that Defendants breached "several legal duties" when they failed to use ordinary care to prevent the pit from overflowing and causing damage to Good River's property. (Dkt. 54, at 9–10). Defendants argue that they had no duty to control "water in a watercourse or floodwater" since the moment the "surface water" escaped Defendants' pit, "that water became water in a watercourse as soon as it flowed into the Colorado River and flood water when it overflowed the natural watercourse water." (Dkt. 43, at 10). Good River responds that water from Defendants' property flowed directly through the Colorado River to Good River's property,

8

and did not in that process become part of the Colorado River, and that in any event, "Defendants nonetheless were under a duty of care to prevent the structures on their property, such as the embankments, from causing damage" to Good River's property. (Dkt. 48, at 14).

Because the parties dispute the nature and source of the water that flooded Good River's property, there remains a factual dispute as to whether Defendant owed Good River a duty of care, either under TWC section 11.806 or the common law, in storing and controlling the water in the pit given the previous breaches to the pit in 2013. *See Tex. Woman's Univ.*, 221 S.W.3d at 283 (noting that that section 11.086 "imposes a duty of strict liability"). While Defendants are correct that they had no duty to control floodwaters, which are exclusively under the control of the State of Texas, here a genuine factual dispute as to the proper characterization of the water that flooded the Good River farm during the October 2015 flood precludes summary judgment at this time. (*Compare* Dkt. 43, at 3, *with* Dkt. 48, at 3–4); *Tex. Woman's Univ.*, 221 S.W.3d at 283 (denying summary judgment on negligence claim where defendant argued that "it did not owe a duty [under TWC section 11.086] to control floodwaters because such waters were subject to the exclusive control of the State" and plaintiff raised fact issue as to proper characterization of the water at issue).

### D. Nuisance

In their amended complaint, Good River alleges that Defendants intentionally or negligently "created and maintained a condition that substantially interfered with" its enjoyment of its property by allowing the pit to remain in a condition that twice has "failed in some fashion and released impounded water during rain" that affected Good River's property. (Dkt. 54, at 6). Good River further alleges that Defendants should be held strictly liable for the damage to Good River's property "because Defendants' abnormally dangerous conduct created and maintained the condition that substantially interfered with [Good River's] interest." (Dkt. 54, at 7). Defendants claim that Good River cannot establish its nuisance claim under theories of negligence, strict liability, or

9

intentionality because Defendants' activities in maintaining the pit were not "abnormally dangerous," Defendants did not cause harm intentionally, and because Good River's negligence claim fails for absence of duty, Good River's private nuisance claim "fails as a matter of law." (Dkt. 43, at 10–12). Good River responds that because "Defendants' embankments and structures had already produced a flood previously," Defendants knew that "the structures and modifications they made to their property carried significant risk" of flooding such that Good River can establish a claim of private nuisance under either intentional or negligence theories. (Dkt. 48, at 16–17).

A nuisance is "a condition that substantially interferes with the use and enjoyment of land by causing unreasonable discomfort or annoyance to persons of ordinary sensibilities." *Schneider Nat'l Carriers, Inc. v. Bates*, 147 S.W.3d 264, 269 (Tex. 2004); *Ronald Holland's A–Plus Transmission & Auto., Inc. v. E–Z Mart Stores, Inc.*, 184 S.W.3d 749, 758 (Tex. App.—San Antonio 2005, no pet.). "To be actionable, a defendant must generally engage in one of three kinds of activity: (1) intentional invasion of another's interest; (2) negligent invasion of another's interests; or (3) other conduct, culpable because abnormal and out of place in its surroundings, that invades another's interest." *E–Z Mart Stores, Inc.*, 184 S.W.3d at 758. Because a dispute of material fact exists with regard to whether Defendants owed Good River a duty of care either under TWC section 11.086 or under the common law for Good River's negligence claim, and the evidence supporting Good River's negligence claim also supports its nuisance claim, the Court will deny summary judgment on Good River's nuisance claims.

### E. Permanent Injunction

Good River asks the court to grant a permanent injunction to prevent "the substantial risk of future flooding and the impact that may have on [Good River's] farm" by enjoining Defendants from increasing the height of their embankment on the Colorado River, ordering them to maintain vegetation across the embankment, and take certain steps to "minimize the effects of cross-current

flow at the northeast corner of the reservoir." (Dkt. 54, at 13). Defendants argue that the Court should dismiss Good River's request for a permanent injunction on the basis that "its underlying claims are not actionable." (Dkt. 43, at 12–13). However, given the outstanding factual disputes underlying Good River's statutory, negligence, and nuisance claims, the Court likewise denies Defendants' motion for summary judgment on Good River's request for a permanent injunction.

## IV. CONCLUSION

Accordingly, **IT IS ORDERED** that Defendants' Motion for Summary Judgment, (Dkt. 43), is **GRANTED IN PART** and **DENIED IN PART**.

**IT IS FURTHER ORDERED** that Good River's negligence per se claim is dismissed with prejudice.

**IT IS FINALLY ORDERED** that Defendant's Motion for Summary Judgment on Good River's negligence, nuisance, and statutory claims is denied.

**SIGNED** on November 30, 2020.

_____
ROBERT PITMAN
UNITED STATES DISTRICT JUDGE